WILLIAM TELL KUDLICH, PROSECUTOR, v. PATRICK R. GRIFFIN ET AL.

Submitted July 1, 1915—Decided February 7, 1916.

1. A general law, as distinguished from a special or local law within the meaning of the constitution, is a law that embraces a class of subjects or places, and does not omit any subject or place naturally belonging to such a class. The test of the generality of a law adopted is that it shall embrace all and exclude none whose conditions and wants render such legislation equally appropriate to them as a class.

2. The principle by which general laws are distinguished from those which are either local or special applies to all legislation regulating the internal affairs of municipalities. Where the classification appears to rest upon substantial grounds, the line which separates the places included from those excluded is a matter of judgment, and the act of the legislature will prevail unless it plainly appears that such classification is in violation of the constitutional prohibition.

3. Chapter 379 of the laws of 1911 (*Pamph. L., p.* 783), entitled "An act relating to certain officers and employes of second-class cities of this state now having or which may. hereafter have a population of seventy thousand inhabitants and not exceeding ninety thousand inhabitants, abolishing their term of office and prohibiting their removal except for cause," puts all officers and employes, with the exception of those designated by section 3, of second-class cities between seventy thousand and ninety thousand inhabitants which have not adopted the Civil Service act of 1908, on a civil service basis, and the effect of this act is to leave cities having a population of seventy thousand inhabitants and no more than ninety thousand inhabitants that have adopted civil service under the Civil Service law, and puts cities of the same population that have not adopted the Civil Service law in a class by themselves, and is an obviously arbitrary classification, there being no reasonable basis for such a classification

4. The prosecutor was appointed health warden of the city of Hoboken by the board of health of that city, and continued to hold said office until the adoption by the city of the provisions of the Walsh act, when the city commissioners passed an omnibus resolution terminating the terms of office of all such officials and employes, including that of the prosecutor, and he claims that by virtue of the provisions of the act of 1911 (*Pamph. L., p.* 783), he could only be removed for just cause after a public hearing upon charges preferred in conformity with the requirements of that act. *Held,* that as the act of 1911 (*Pamph. L., p.* 783) is clearly unconstitutional, that the prosecutor was not protected in his office by virtue thereof, and that under the provisions of the Walsh act, his term of office was terminated upon the organization of the board of commissioners.

On *certiorari.*

Before Justices PARKER, MINTURN and KALISCH.

For the prosecutor, *Edward Stover.*

For the defendants, *Horace L. Allen* and *John J. Fallon.*

The opinion of the court was delivered by ·

KALISCH, J.   The prosecutor challenges the legality of his removal as health warden of the city of Hoboken by its commission government, which it had adopted in February, 1915, and organized in March, 1915.   The claim of the prosecutor is that under section 1, chapter 379 of laws of 1911 (*Pamph.*

L., p. 783), he was exempt from removal in that he held an office under the government of a second-class city, from which, by virtue of the act referred to, he could not be removed except for just cause and then only after a public hearing upon written charges preferred in conformity with the requirement of the second section of the act, and since no written charges were preferred against him and no public hearing had, that therefore his removal was unlawful.

For the defendants it is claimed that the act relied on by the prosecutor is invalid in that it is in contravention of that provision of article 4, section 7, placitum 11, of the constitution of the State of New Jersey, which prohibits the legislature from passing private, local or special laws regulating the internal affairs of towns, &c.

But before entering upon a discussion of the legal question presented, for the sake of clearness we will turn to a consideration of the facts which give rise to this controversy and which, briefly stated, are these: The prosecutor was appointed health warden by the board of health of the city of Hoboken on the 10th day of October, 1899, to fill out the unexpired term of Dr. Connelly, deceased, who held that position, and on the expiration of that term the prosecutor was reappointed and held the same position continuously by appointment until January 1st, 1914, when he was reappointed for the term of three years, at a salary of $1,000 per annum. On the 9th day of February, 1915, Hoboken adopted the "Walsh act" cited below. The commissioners elected under the act qualified in the latter part of March, 1915. On the 30th day of March, 1915, the board of commissioners abolished the various existing boards of the city, including the then existing board of health, which was composed of members appointed by the former mayor of the city under its charter government. On the 31st day of March, 1915, the board of commissioners, by an omnibus resolution, terminated the terms of office of all city officials and employes, including that of the prosecutor.

That the act of 1911 (Pamph. L., p. 463), called the Walsh act, confers this power on the board of commission-

ers is not disputed, and even if it had been questioned it would be without avail, because the exercise of such power has been repeatedly upheld. *Salter* v. *Burk*, 83 *N. J. L.* 152; *Istvan* v. *Naar*, 84 *Id.* 113.

The point made by the prosecutor is that since he was not a member of the board of health, but simply its appointee, that, therefore, though the offices of the members of such board were abolished by virtue of the Walsh act, it left the appointive office which he held under such former board unaffected. The prosecutor cites *Istvan* v. *Naar, supra,* in support of this proposition. But it is apparent from a perusal of that case that the counsel for prosecutor labors under a misapprehension of what was there decided. The court in that case was discussing whether the Walsh act was intended to interfere with the Health act of 1887. Mr. Justice Parker makes this plain in the case cited (on *p.* 116), where, in speaking for this court, he says: "The secondary control of the commissioners, however, over the public health is ample. By the Health act itself (section 9) the members of the local board of health are appointed in such manner and hold office for such terms as the governing body may by ordinance provide."

By the Walsh act the terms of all officers expire upon the organization of the board of commissioners. This left that board in absolute control of the situation, with power to fill the vacancies and to fix the terms of office of members of the board of health subject to certain limitations. Now, to go one step further, the Walsh act also provides that terms of "all other officers, whether elective or appointive, shall immediately cease and determine." This provision is broad enough and was intended to include all officers appointed by the various boards or departments of a municipality. That this is so is emphasized by the proviso of section 2 of the act which declares that nothing contained in the act "shall be construed to affect in any way the term of office of any policeman, &c., or other employe of any police or fire department, veteran of any war, or other official employe now protected by any tenure of office act."

This brings us to a consideration of the question whether the prosecutor is protected by an act entitled "An act relating to certain officers and employes of second-class cities of this state now having or which may hereafter have a population of seventy thousand inhabitants and not exceeding ninety thousand inhabitants, abolishing their term of office and prohibiting their removal except for cause." *Pamph. L.* 1911, *p.* 783. This act was approved June 14th, 1911, and puts all officers and employes, with the exception of those designated by section 3 of the act, of second-class cities between seventy thousand and ninety thousand inhabitants, which have not adopted the Civil Service act of 1908, on a civil service basis. If the act is valid the prosecutor would be clearly within its protection, because he is an appointee of a board of health of the city of Hoboken, and therefore is not affected by section 3 of the act.

We think the attack upon the act upon the ground that it is unconstitutional, and therefore afforded no protection to the prosecutor, is well founded. The act comes manifestly within that species of legislation which has been denounced by the decisions of the courts of this state as special and in violation of article 4, section 7, placitum 11 of the constitution.

In the first place, the provisions of the act clearly indicate that it was not to be a general act to apply equally to all cities of the second class. For the fifth section of the act provides that it shall not apply to such cities of the second class of this state which now or hereafter may have a population of seventy thousand inhabitants and not exceeding ninety thousand inhabitants, as have already adopted the Civil Service act of 1908. This purport of the act does not appear in its title, but the validity of the act not having been questioned on that ground, we need not stop to consider it.

As legislation is the expressed will of the people through its legislators, courts are loth to declare an act unconstitutional unless it clearly appears to be so. If there be any doubt as to its constitutionality or if it will admit of a construction that will save it from condemnation of invalidity,

the rule is to sustain its constitutionality. And it is with this rule in mind that we have considered the attack made upon the constitutionality of the act.

Now in the present case the effect of the act is to leave cities having a population of seventy thousand inhabitants and no more than ninety thousand inhabitants, that have adopted civil service, under the Civil Service law, and put cities in the same population class that have not adopted the Civil Service law in a class by themselves with tenure of office and no civil service as to appointment. No reasonable basis for such a classification has been suggested. It appears to us to be an obviously arbitrary classification. The population classification adopted is apparently illusory. The act does not apply to Paterson, Trenton, Camden, Bayonne, Passaic, Perth Amboy and other second-class cities and other cities in the like class. Nor can it be applied to second-class cities of the population mentioned which shall after June 14th, 1911, adopt the Civil Service law.

Upon the face of it it is double classification. It imposes upon cities of the second class which have been already classified for municipal legislation on the basis of population under the act of 1882 (1 *Comp. Stat.*, p. 956, § 1338) another classification or rather, more accurately speaking, several classifications, viz.: (1) A population basis of seventy thousand inhabitants and no more than ninety thousand inhabitants, thus excluding from the operation of the act all cities of the second class under the general classification act which have a population of more than ninety thousand and not exceeding one hundred and fifty thousand and less than seventy thousand but more than twelve thousand inhabitants. (2) Cities of the second class of the population designated by the act which have already adopted the Civil Service law of 1908 are expressly excepted from the operation of the act. (3) Cities of the second class which may have the designated population and which shall have adopted the Civil Service law are also expressly excepted from the operation of the act.

No good reason can be assigned why second class cities which have a population of more than ninety thousand and

not exceeding one hundred and fifty thousand inhabitants and more than twelve thousand and less than ninety thousand inhabitants, which have or which have not adopted the Civil Service law should be excluded from the act.

In order to clarify the situation it may be well to mention in this connection that under section 1337 of the Compiled Statutes above referred to, cities of the first class are those which have within their territorial limits a population exceeding one hundred and fifty thousand inhabitants and cities of the second class are those which have a population within their territorial limits of not less than twelve thousand nor more than one hundred and fifty thousand inhabitants.

The act which we are now considering is a companion act to chapter 378 of laws of 1911, which latter act relates to the tenure of officers and employes of cities and counties of the first class. *Pamph. L.* 1911, *p.* 781.

We are unable to perceive what reasonable relation the population basis fixed by the act bears to the tenure of office system created by it which would permit the removal of a health warden by adoption of commission government and permit his removal in second-class cities which have not adopted the Civil Service act and which have a population of less than seventy thousand or more than ninety thousand inhabitants. The classification is clearly illusory and arbitrary and is an attempted evasion of the constitutional provision above referred to. In this regard *Wanser* v. *Hoos*, 60 *N. J. L.* 482, is instructive and controlling. Judge Depue, in that case, in discussing the constitutional provision invoked in the present case, and speaking for the Court of Errors and Appeals (on *p.* 525), said: "The legislature may without infringing on this constitutional interdict resort to classification for the convenience of legislation.

"The act of 1882 (*Gen. Stat., p.* 458), by which cities were divided into classes on the basis of population, and other statutes by which boroughs and counties were in like manner divided, are instances of such legislation. The act of 1882 expressly declares that the classification therein made was for the purpose of municipal legislation in relation to cities, and

that all legislation founded upon such classification should
be construed to embrace all cities of the class referred to
\*   \*   \*   in the first case in which this provision came be-
fore the court, a general law as contradistinguished from
a special or local law within the meaning of the constitution.
was defined to be a law that embraced a class of subjects or
places and did not omit any subject or place naturally be-
longing to such a class. *Van Riper* v. *Parsons,* 40 *N. J. L.* 1.

"The test of the generality of a law adopted is that it shall
embrace all and exclude none whose conditions and wants
render such legislation equally appropriate to them as a class.
It is also equally well settled by decisions of our courts that,
although population may be made the basis of classification
in statutes relating to municipal bodies, such a classification
cannot be made the means of evading the constitutional inter-
dict of local or special laws."

The learned justice then discusses the earlier cases dealing
with the subject in hand and demonstrates with great per-
spicacity when classification on the basis of population re-
lating to the structure, machinery and powers of municipal
government is legitimate, and points out that where such
classification has been upheld population bore a reasonable
relation to the necessities and proprieties of government, and
that even in such cases the legislative judgment will not pre-
vail if the classification be plainly illusory or applied illusively.

Testing the statute under review by these sound canons of
construction it is manifest that it is special legislation inter-
dicted by the constitutional provision above referred to.

We think, also, that the statute possesses the same uncon-
stitutional features that existed in the statute reviewed in
*Helfer* v. *Simon,* 53 *N. J. L.* 550, and held to be unconsti-
tutional.

In that case the title of the act authorized cities of the
second class to extend the term of office and to fix the rate of
compensation of certain officers therein.

Mr. Justice Scudder, speaking for this court (on *p.* 551),
said: "The title is not general, but limits its application to
all cities of the second class, and relates to extending the term

and fixing the compensation of certain officers therein. The body of the act is even more objectionable than the title, for it confines its operation to cities of the second class wherein they have an officer known as city physician; this is a subdivision of classification that makes the purpose of the act very apparent to control the appointment of city physician in certain cases. Such legislation is unconstitutional, and the title of the act, though attempting to be more general in its terms, is local and special in its object."

Now as to the title of the act under discussion, we find that it relates to certain officers and employes of second-class cities and abolishes their term of office and prohibits their removal except for cause.

The body of the act abolishes the term of all persons holding office in certain cities of the second class, except those enumerated in section 3 of the act. And they are: officers elected by popular vote; appointees of the mayor or other head officer of the municipality; all employes of any board of education who are required to hold certificates of qualification for eligibility for such employment; all law officers and their assistants; the members of commissions; boards appointed or elected by the board of aldermen, common council or other governing body of the municipality.

It is to be observed that while the act exempts all boards or commissions from its operation, it does not exempt the employes or appointees of the board of health or of any other boards or commissions except those of the board of education coming within the statutory designation. The appointees of the mayor or other head officer of a municipality are not within the protection of the act.

It appears to us that the chief aim of the law making body was to legislate for the sole benefit of appointees and employes of certain boards and commissions, qualifiedly, excepting those of the board of education, in certain cities of the second class. Why the appointees of the mayor or other head officer of a municipality should be placed on a different footing than those of boards or commissions can only be reasonably explained upon the theory that it was the legislative

intent arbitrarily to benefit a particular class of appointees and employes carved out of a general class, and then only in certain cities of the same class. It needs no further argument to convince us that this is special legislation of the most objectionable character and cannot be upheld. See *Goldberg* v. *Dorland,* 56 *N. J. L.* 364; *Cook* v. *Ramsey (Court of Errors and Appeals),* 90 *Atl. Rep.* 265; *Delaware River Transportation Co.* v. *Trenton,* 86 *N. J. L.* 48; affirmed by the Court of Errors and Appeals in *Id.* 679.

In *Fagen* v. *Morris,* 83 *N. J. L.* 3, affirmed by the Court of Errors and Appeals in 84 *Id.* 759, the constitutionality of chapter 378 of laws of 1911 (*Pamph. L., p.* 781), relating to cities and counties of the first class was not drawn into question or passed upon, and there is nothing in the opinion of that case which in any manner conflicts with the views expressed herein regarding the constitutionality of the act, relating to cities of the second class, assailed by the defendants.

We have, therefore, reached the conclusion that the prosecutor was not protected by the act invoked in his behalf because of its unconstitutionality, and that the writ be dismissed and the proceedings affirmed, with costs.